**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| BIOMET ORTHOPEDICS, LLC | ) | |
| f/k/a BIOMET ORTHOPEDICS, INC. | ) | |
| and BIOMET SPORTS MEDICINE, LLC, | ) | |
| f/k/a ARTHROTEK, INC., | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | **Civil No. 3:08CV280-AS-CAN** |
| v. | ) | |
| | ) | |
| KEVIN VAUGHAN, SUZANNE VAUGHAN | ) | |
| and PREMIER MEDICAL, LLC, | ) | |
| | ) | |
|     Defendants. | ) | |
| *******************************************) | | |
| KEVIN VAUGHAN and SUZANNE | ) | |
| VAUGHAN, | ) | |
| | ) | |
|     Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BIOMET ORTHOPEDICS, LLC | ) | |
| f/k/a BIOMET ORTHOPEDICS, INC. | ) | |
| and BIOMET SPORTS MEDICINE, LLC, | ) | |
| f/k/a ARTHROTEK, INC., | ) | |
| | ) | |
|     Counter-Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on Defendant Premier Medical, LLC's Motion to Dismiss

(Doc. No. 41) the Second Amended Complaint (Doc. No. 34) pursuant to Fed. R. Civ. Pro. 12(b)(2)

for lack of personal jurisdiction and pursuant to 12(b)(3) for improper venue. The parties have fully

briefed the issues, and the Court held a hearing on the motion in South Bend, Indiana on February

18, 2009. For the reasons discussed below, the Motion to Dismiss (Doc. No. 41) is DENIED.

## I. Procedural History and Factual Background

On June 11, 2008, Plaintiffs Biomet Orthopedics, LLC and Biomet Sports Medicine, LLC ("Biomet") of Indiana, filed a Complaint in federal court based upon diversity since the Defendants are citizens of Colorado. The Complaint was amended on July 2, 2008 and on November 12, 2008 (Doc. No. 34), adding Premier Medical, LLC ("Premier") as a Defendant.[1] Premier was made a party to the litigation after Defendants Kevin and Suzanne Vaughan (collectively "the Vaughans") claimed in their affirmative defenses that Biomet failed to name an indispensable party and failed to name the proper party by confusing Kevin Vaughan ("Mr. Vaughan") with Premier as the entity that served as Biomet's distributor. *See*, Answer to the First Amended Complaint, Doc. No. 21, p. 14.

The action arises from the alleged breach of a promissory note executed on October 3, 2006 ("the note") by Biomet and the Vaughans, in which Mr. Vaughan was denoted a "distributor." It is undisputed that Premier is not a party to the note, but Premier is a Colorado limited liability company wholly owned by its President, Mr. Vaughan. The Vaughans do not challenge this Court's jurisdiction over them, and in fact, the note contains a clause making jurisdiction over the Vaughans proper. *See*, Doc. No. 34-2, ¶ 6(e). Yet, Premier, not being a party to the note, moves to dismiss itself from the Second Amended Complaint for lack of personal jurisdiction and improper venue. In fact, Premier asserts that it has no contacts with Indiana, has no office, employees, or property in Indiana, has never done business in Indiana, and has never invoked the benefits and protections of Indiana's laws. *See*, Memo. in Support, Doc. No. 42, p. 4, 6, Exb. A, Aff. of Vaughan; Reply Memo.,

---

[1]     Premier is named in Counts III, V, VII, IX, XI, XIII, XV, XVII, XIX, and XXI of the Second Amended Complaint. *See*, Doc. No. 34.

Doc. No. 55, p. 3-7, Exb. A, Aff. of Vaughan.

However, Biomet has shown that Mr. Vaughan, who contends that his actions were not on behalf of Premier, has had the following connections to Indiana: (1) Mr. Vaughan, as a distributor for Biomet, was regulated from Indiana by Biomet, who created price lists and set discounts for the products sold by distributors, prepared marketing materials, managed the inventory consigned to distributors, and oversaw the payment of commissions; (2) Mr. Vaughan made several telephone and/or email contacts with Biomet in Indiana regarding sales, marketing, engineering, and customer service; (3) Mr. Vaughan visited Biomet in Indiana to discuss his business relationship with Biomet and to attend at least three tours provided to surgeons at Biomet; (4) Mr. Vaughan received inventory manufactured in and sent from Biomet in Indiana; and (5) Mr. Vaughan failed to make payments to Biomet in Indiana for missing inventory and shipping charges. *See,* Response Memo., Doc. No. 50, p. 2-4, Exbs. A-D, Affs. of Coen, Allison, and Stewart, and Decl. of Nolan.

Additionally, the Vaughans have responded and asserted defenses on behalf of Premier that explicitly rely on the note that they and Biomet entered, as follows:[2]

> "[Defendants state that] since no later than April 30, 2007, Biomet Orthopedics has willfully withheld commissions of at least $77,292.43 owed to Premier Medical, LLC, a Colorado limited liability company wholly owned by Kevin Vaughan, and the amount of withheld commissions has been or should have been applied by Biomet Orthopedics to the Installment Promissory Note in accordance with its terms . . ." Answer to the Second Amended Complaint, Doc.

---

[2] The Vaughans also assert that Biomet (or Biomet's predecessor, Arthrotek) had a contract with Mountain West Medical, LLC (a Colorado company), and not with Mr. Vaughan, who is the CEO of Mountain West Medical, LLC. Apparently this contract, which was never presented to the Court, requires mediation or arbitration of disputes between Mountain West Medical, LLC and Biomet. But this undeveloped assertion does not determine whether Premier has availed itself to this Court's jurisdiction. *See*, Answer to the Second Amended Complaint, Doc. No. 40, ¶¶ 4, 107, 117, Affirm. Def. ¶¶ 10, 11.

No. 40, ¶¶ 2, 26, 31-33.

" . . .products were consigned to. . . Premier Medical [from Biomet]. . ." *Id*. at ¶ 4.

"Biomet Orthopedics engaged Premier Medical, LLC, a Colorado limited liability company, as an independent contractor to distribute the products of Biomet Orthopedics . . ." *Id*. at ¶¶ 17, 36-40, 48-66, 68, 92, 96, 100-01.

"Biomet Sports Medicine engaged Premier Medical, LLC, a Colorado limited liability company, as an independent contractor to distribute products of Biomet Sports Medicine for the period from February 2, 2007 through April 30, 2007." *Id*. at ¶¶ 106, 109-114, 118-19, 136-53, 155, 178, 182, 186-87.

"Biomet Sports Medicine claim is barred by waiver and estoppel as Premier Medical was induced to act as distributor on the basis of a commitment by Biomet Sports Medicine to start Premier Medical with a clean slate as of February 2, 2007." *Id.* at Affirmative Defenses ¶ 9.

"Any amount claimed by Plaintiffs must be offset by earned but unpaid commissions [owed by Biomet Orthopedics and Biomet Sports Medicine] to Premier Medical, LLC, or alternatively to Kevin Vaughan if Kevin Vaughan is determined to be the distributor of Biomet . . .products." *Id.* at Affirmative Defenses ¶¶ 12-13.

Furthermore, the Vaughans have filed counterclaims for breach of contract, unjust enrichment, and civil conversion, which allege that Biomet has willfully withheld commissions owed to Premier Medical, LLC or Mr. Vaughan, and that said commissions should be used to offset any amount owed to Biomet under the promissory note. *See*, Counterclaims, Doc. No. 40, p. 19-27. Yet, at the same time, the Vaughans have requested that Premier be dismissed from the case for lack of personal jurisdiction and improper venue.

## II. Standard of Review

Fed. R. Civ. P. 12(b)(2) authorizes the court to dismiss claims for lack of jurisdiction over the person. In federal court, a plaintiff need not include facts alleging personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003); *RAR, Inc. v. Turner, Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). However, once the defendant moves to dismiss a complaint under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Cent. States, S.E. & S.W. Areas Pension Fund v. Phencorp Reinsurance Co.,* 440 F.3d 870, 875 (7th Cir. 2006). The extent of this burden depends on how the issue of personal jurisdiction comes before the court. Until an evidentiary hearing takes places to resolve any disputed material facts, "the party asserting personal jurisdiction need only make out a *prima facie* case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002). If the defendant has submitted evidence in opposition, such as affidavits, then the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Found.,* 338 F.3d at 782-83 (commenting favorably on decisions from other circuits imposing this requirement). In making its *prima facie* case, the plaintiff is entitled to a favorable resolution of all relevant factual disputes and a liberal reading of the record. *Id*. at 782. When an evidentiary hearing is held, the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Id*. (citing *Hyatt Int's Corp*., 302 F.3d at 713).

When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. *See Allstate Ins. Co. v. Crider*, 2009 WL 196411 (S.D.Ind. Jan. 26, 2009), Hamilton, J. A court may examine facts outside the complaint in order to determine whether venue is proper. *Id*. (citing *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001) (when jurisdiction

or venue depend on contested facts, a district court is free to hold a hearing and resolve the dispute before allowing the case to proceed)).  Venue is proper in a diversity case in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(a).

Because Defendants reside in Colorado, § 1391(a)(1) is inapplicable.  Likewise, § 1391(a)(3) is inapplicable because the District of Colorado would be an appropriate venue for plaintiffs' cause of action.  Therefore, the Court's inquiry is limited to whether, under § 1391(a)(2), "a substantial part of the events or omissions giving rise to the claim" occurred in this district.

Here, the parties have submitted affidavits in support of their positions, and they dispute whether Premier has had any, let alone, sufficient contacts with Indiana to be subject to this Court's jurisdiction.  The questions the Court now turns to is whether Biomet has established personal jurisdiction over Premier by a preponderance of the evidence, and whether venue is proper under § 1391(a)(2).

### III.  Discussion

**A)**     **Personal Jurisdiction**[3]

A federal court sitting in diversity has personal jurisdiction only where a court of the state

---

[3]     As to personal jurisdiction, this Court finds helpful the discussion in *Noble Roman's, Inc. v. French Baguette, LLC,* 2008 WL 975078, *2-5 (S.D.Ind. April 8, 2008), McKinney, J., and *Hoffa Engineering, L.L.C. v. Craney*, 2007 WL 831820 (S.D.Ind. March 12, 2007), Tinder, J.

in which it sits would have such jurisdiction. *Citadel Group Ltd. v. Washington Regional Medical Center,* 536 F.3d 757, 760 (7th Cir. 2008) (citing *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir. 1997)). This Court may exercise jurisdiction over a non-resident defendant if the Court has either specific or general jurisdiction over the defendant. *See Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712 (7th Cir. 1998). Specific jurisdiction refers to jurisdiction over a defendant in a lawsuit arising out of or related to the defendant's contacts with the forum. *Id.*; *See International Shoe Co. v. Washington*, 326 U.S. 310, 315-17 (1945) (specific jurisdiction exists when the defendant's contacts with the forum are related to the controversy and reach a minimum threshold); *Citadel Group Ltd.*, 536 F.3d at 760 n. 3 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-16 (1984)). This occurs when a defendant purposefully avails itself of the privilege of conducting activities within the forum state so that the defendant reasonably anticipates being haled into court there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). General jurisdiction is proper when the defendant has continuous and systematic general business contacts with the forum, and it allows the defendant to be amenable to suit within that forum regardless of the subject matter of the lawsuit. *Helicopteros,* 466 U.S. at 414-16.

Under Indiana law, the question of jurisdiction over a nonresident defendant formally required a two-step inquiry, first to determine if the defendant's contacts with Indiana fell under the state's long-arm provision, *see* Trial Rule 4.4(A), and second to determine if the exercise of jurisdiction comported with the federal constitutional requirements of due process. *Pozzo Truck Center, Inc. v. Crown Beds, Inc.*, 816 N.E.2d 966, 970 (Ind.Ct.App. 2004), *abrogated by LinkAmerica Corp., v. Albert,* 857 N.E.2d 961 (Ind. 2006). In *LinkAmerica Corp.,* the Indiana Supreme Court determined that the two steps had become one. 857 N.E.2d at 967; *see also, Litmer*

*v. PDQUSA.com*, 326 F.Supp.2d 952, 955 (N.D.Ind. 2004) (holding that the 2003 edition to Ind. T.R. 4.4(A) expanded personal jurisdiction to the full extent permitted by the Due Process Clause and eliminated any need to identify a specific jurisdictional basis from the list set out in the rule). The 2003 amendment to Rule 4.4(A) extended the reach of state court jurisdiction to "any basis not inconsistent with the Constitutions of this State or the United States." Ind. Tr. R. 4.4(A); *LinkAmerica Corp.*, 857 N.E.2d at 967. Therefore, personal jurisdiction must be consistent with the Federal Due Process Clause, and the retention of the enumerated acts found in Rule 4.4(A) serves as a handy checklist of activities that usually support personal jurisdiction, but does not limit the exercise of personal jurisdiction. *Id*. This Court therefore has jurisdiction so long as Biomet can show that Premier had sufficient minimum contacts with Indiana such that jurisdiction does not offend 'traditional notions of fair play and substantial justice.' *Int'l Shoe Co.,* 326 U.S. at 316 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). If the defendant has contacts with the forum state sufficient for general or specific jurisdiction, due process requires that the assertion of personal jurisdiction over the defendant is reasonable. *Burger King,* 471 U.S. at 477.

It is true that corporate affiliation or ownership itself is not a sufficient minimum contact for the exercise of personal jurisdiction. *See Cent. States, S.E. and S.W. Areas Pension Fund v. Reimer Express World Corp*., 230 F.3d 934, 943-44 (7th Cir. 2000). However, here, the Court finds that Biomet's consignation of its products to Premier from Indiana, and Premier's acknowledged receipt and distribution of those products, constitutes business conducted in Indiana by Premier, and is not business activity solely attributed to Mr. Vaughan. In fact, Premier asserts that Biomet has willfully withheld commission owed to it, which should have been applied to money owed pursuant to the terms of the note— the same note which is the subject of this lawsuit filed by Biomet. While it is

true that Premier is not named on the note, it is also true that its sole owner is a party to the note, and as mentioned, Mr. Vaughan is seeking money allegedly owed to Premier on the note. By signing the note, the Vaughans acknowledged that the execution of the note, the acceptance of its terms, and the performance of certain obligations and payment of money would occur in Warsaw, Indiana. The note even states that it shall be construed according to Indiana law. *See*, Doc. No. 34-2, ¶ 6(e). While Premier's admitted contacts are enough to establish jurisdiction, it is undisputed that Mr. Vaughan is the sole owner and President of Premier. There is no evidence refuting his control over Premier, or the ability to impute Mr. Vaughan's activities to those of Premier, for both jurisdictional and presumably liability purposes. *Id.*; *See also, DePuy Orthopaedics, Inc. v. Gault South Bay, Inc.*, 2007 WL 3407662, *4-5 (N.D.Ind. Nov. 13, 2007) ("unlike an ordinary employee who has no control over or derives no direct benefit from his employer's sales in a distant state, [the president] was the primary participant in the parties' distributorship arrangement").

In addition, Mr. Vaughan's contacts with Indiana, including trips for surgeon tours, were purposeful rather than random or fortuitous, and they gave him fair warning that he, as well as his company, could be subject to suit in Indiana arising from those contacts. When the Defendants deliberately entered into the promissory note as a "distributor" with Biomet, an Indiana corporation, they purposefully availed themselves of the privilege of conducting business in Indiana. *See Burger King,* 471 U.S. at 473 ("[W]e have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities.") (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647 (1950)); *Woodmar Coin Center, Inc. v. Owen,* 447 N.E.2d 618, 621 (Ind.Ct.App. 1983) (stating that defendant "purposely availed himself of the

benefits and responsibilities of doing business in this State by soliciting, negotiating and forming a contract with an Indiana resident"). Furthermore, Biomet has submitted evidence indicating that Defendants, as distributors of Biomet, continuously communicated with Biomet in Indiana through telephone and e-mail. Even without physical presence in Indiana, such communications may establish minimum contacts, especially if they relate to an interstate commercial contract. *See Burger King,* 471 U.S. at 476; *Heritage House Rests., Inc. v. Cont'l Funding Group, Inc.,* 906 F.2d 276, 283 (7th Cir. 1990) (observing that defendant "created a relationship which is naturally based on telephone and mail contacts rather than physical presence, and it should not be able to avoid jurisdiction based on that distinction"). "It is these factors— prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing— that must be evaluated" in the minimum contacts analysis. *Burger King,* 471 U.S. at 479. These combined factors demonstrate that Defendants, including Premier, could reasonably anticipate being sued in Indiana on claims arising from the note, where Premier intended to distribute products manufactured and derived from Indiana, had product prices, marketing, and commissions controlled from Indiana, and intended to receive revenue (or commissions) from Indiana. Mr. Vaughan even acknowledges the nexus between Premier's claimed damages due under the note, which is specifically related to the business of this lawsuit. As such, Premier could reasonably anticipate being sued in Indiana.

Once the Court finds sufficient minimum contacts, a defendant escapes jurisdiction only by making a compelling case that forcing it to litigate in the forum state would violate traditional notions of fair play and substantial justice. *See Burger King,* 471 U.S. at 476. The Court may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the

plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Id*. at 477.

Defendants have not submitted any evidence demonstrating that forcing Premier to litigate in this judicial district would violate traditional notions of fair play and substantial justice. Though it is always somewhat burdensome to defend a lawsuit away from home, it is not a burden that violates due process in this instance. *See Burger King,* 471 U.S. at 474 (explaining that modern transportation and communications mean it is usually not unfair or too burdensome to require a party to defend itself in a state where it engages in economic activity). In fact, Biomet is pursuing the same claims against Premier, as it is pursuing against Premier's sole owner, Kevin Vaughan. There is no dispute that Mr. Vaughan must litigate this matter in this Court, and therefore this is an effective and convenient forum to litigate the claims. Further, any burden on Premier does not outweigh Indiana's interest in enforcing the contractual obligations of its companies or Biomet's interest in obtaining relief, and jurisdiction over Premier is fair and just.

Defendants will not suffer a significantly greater burden defending the suit here. In light of the substantial connection between Biomet's claims and Defendants' purposeful contacts with this forum, and the lack of prejudice to Premier in appearing here, this Court may exercise personal jurisdiction over Premier in this action.

**B)** **Venue**

The Court, having determined that it has personal jurisdiction over Defendant Premier, now turns to Defendants' alternative motion to dismiss Premier because venue is improper pursuant to 28 U.S.C. § 1391(a)(2). Section 1391(a)(2) allows venue here if "a substantial part of the events or

omissions giving rise to the claim" occurred in Indiana.  This rule does not require that the majority of events giving rise to the claim occurred in the forum district, but only that a substantial part of the events took place there. *See Johnson v. Masselli*, 2008 WL 111057, *4 (N.D.Ind. Jan. 4, 2008) (concluding that "the critical question is whether the events in the forum were part of the historical predicate for the instant suit . . . [which] does not require a winnowing down the possible fora to only one, but rather can result in multiple districts in which venue is proper") (internal quotation omitted)).

Under this standard, venue is proper in this judicial district.  The claim arises under the parties' promissory note.  Even though Defendants contend that the suit is based on Biomet's failure to pay commissions to Defendants in Colorado, this approach focuses too narrowly on the last triggering event of the lawsuit.  Instead, the sequence of events giving rise to this claim includes the parties' negotiations, execution, and performance of the note.  In light of the interstate and arms-length character of the parties' commercial relationship, these events occurred in Indiana as much as Colorado.  Even if other Premier representatives never personally entered the forum district, venue can still be appropriate if the defendant has communicated with someone in the district, especially over an extended time, and the communications are part of the events giving rise to the claim.  Premier, acting as a contractor to distribute Biomet's products, and claiming commissions due under the note, reveals its business relationship with Biomet in the State of Indiana.

Premier, as well as Mr. Vaughan's, continuous contacts with Biomet in Indiana are part of the historical predicate for this case and are sufficient to support venue here.  Because a substantial part of the events underlying Biomet's claim occurred in this district, venue is proper in this district.

## IV. Conclusion

Based on the foregoing, the Court **DENIES** Defendant Premier Medical, LLC's Motion to

Dismiss (Doc. No. 41) the Second Amended Complaint pursuant to Fed. R. Civ. Pro. 12(b)(2) for

lack of personal jurisdiction and pursuant to 12(b)(3) for improper venue.  Each party to bear its own

costs.

**SO ORDERED**.

**DATED: February 27, 2009**

    /s/ ALLEN SHARP

**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**
